### In re MICHAEL MILKEN AND ASSOCIATES SECURITIES LITIGATION.

MDL Docket No. 924.

United States District Court, S.D. New York.

July 22, 1993.

58

Melvyn I. Weiss, George A. Bauer III, Milberg Weiss Bershad Hynes & Lerach, New York City, Joseph Cotchett, Cotchett, Illston & Pitre, Burlingame, CA, Elizabeth J. Cabraser, Lieff, Cabraser & Heimann, San Francisco, CA, Michael A. Sherman, Barrack, Rodos & Bacine, San Diego, CA, for plaintiffs' co-lead and settlement counsel.

Robert Skirnick, Wechsler, Skirnick, Harwood, Halebian & Feffer, New York City, for plaintiffs Hani Feldstein and Tina Pallas and James W. Pelmiter.

Lawrence A. Sucharow, Joseph Sternberg, Goodkind Labaton Rudoff & Sucharow, New York City, for plaintiffs Jay R. Peshkin and

Rae S. Peshkin and Tina Pallas and James W. Pelmiter.

Robert S. Schachter, Zwerling, Schachter & Zwerling, New York City and Richard S. Wayne, Strauss & Troy, Cincinnati, OH, for plaintiff Tom Smith, D.D.S.

Jeffrey A. Klafter, Bernstein Litowitz Berger & Grossmann, New York City, for plaintiffs Arthur Drucker and May Drucker.

Neal P. Convery, Law Office of Neal P. Convery, Mendota Heights, MN, for plaintiff Charlotte A. Healey.

Jerome H. Torshen, Torshen, Schoenfield & Spreyer, Chicago, IL and Jerome A. Tatar, Jerome A. Tatar & Associates, P.C., Chicago, IL, for plaintiffs Marilyn Kramer and Walter Kramer.

Michael J. Aguirre, Aguirre & Meyer, San Diego, CA and James C. Krause, Law Offices of James C. Krause, San Diego, CA, for plaintiffs James K. Gilman and Elizabeth S. Gilman.

Robert Mills, Law Offices of Robert Mills, San Rafael, CA and Kenneth G. Gilman, Gilman and Pastor, Boston, MA and Thomas L. Krebs, Ritchie & Rediker, Birmingham, AL, for plaintiff Robert Wise.

Scott Fisher, Garwin, Bronzaft, Gerstein & Fisher, New York City and Joel H. Bernstein, Kantor, Bernstein & Kantor, New York City, for plaintiffs Tina Pallas and James W. Pelmiter.

Andrew M. White, Christensen, White, Miller, Fink & Jacobs, Los Angeles, CA, for defendants Robert A. Weingarten, Gerry R. Ginsberg, Phillip A. Fitzpatrick, Rita C. Villa, Kevin J. Perry, Leonard Gubar, Paolomba Weingarten.

Robert Logan, Keesal, Young & Logan, Long Beach, CA and John Cotton, LeBouf, Lamb, Leiby & Macrae, Los Angeles, CA and Charles C. Platt, LeBouf, Lamb, Leiby & Macrae, New York City, for defendants American Exp. Co., Shearson Lehman Bros. Inc., Shearson Lehman Bros. Holdings, Inc., James D. Robinson III, and Howard L. Clark, Jr.

Gerald Kerner, Philip S. Rantzer, Willkie, Farr & Gallagher, New York City, for defendants Richard K. DeScherer, Jeffrey B. Lane, Robert Druskin, William L. Mack, Jerome H. Miller and Peter Cohen.

Theodore N. Miller, Sidley & Austin, Chicago, IL and Daniel R. Murdock, Donovan Leisure Newton & Irvine, New York City, for the other settling participants.

Mark Belnick, Paul Weiss Rifkind Wharton & Garrison, New York City and Richard V. Sandler, Victor & Sandler, Los Angeles, CA, for Michael R. Milken.

## *OPINION*

MILTON POLLACK, Senior District Judge.

### *Summary Statement*

Another part of the overall proposed Milken Global Settlement is here presented. That Global Settlement relates to over 180 federal and state court law suits against Michael R. Milken and a large number of settling individuals and settling partnerships comprising numerous former employees and affiliates of The Drexel Burnham Lambert Group, Inc., sometimes hereinafter referred to as the "Settling Participants."[1] The federal actions against the Settling Participants were transferred to this District Court by the Judicial Panel on Multidistrict Litigation for pre-trial purposes. Under the Milken Global Settlement by the proposal now being considered, there will be created a Settlement Fund for the benefit of a group of claimants referred to for convenience as "Schedule 9 Claimants." The Schedule 9 Claimants include owners or assignees of life

---

1. This Court has previously approved as fair and reasonable the participation of other plaintiffs against Michael Milken and other defendants in the same Milken Global Settlement at issue here. Thus, in an order dated March 9, 1992, the Court approved the participation of The Drexel Burnham Lambert Group Inc. and various of its subsidiaries (90 Civ. 6954, 90 B 10421) in the Milken Global Settlement; in an order dated July 17, 1992, the Court approved the participation of a world-wide class action, *Presidential Life Insurance Company* (92 Civ. 1151) in the Milken Global Settlement; and in a series of orders dated November 30, 1992, in MDL Docket No. 924, the Court approved the participation of 91 class, derivative, and individual cases in the Milken Global Settlement.

insurance contracts or annuity contracts issued by First Capital Life Insurance Company ("FCLIC") or Fidelity Bankers Life Insurance Company ("Fidelity"), (the "Class" herein, is more fully described below).

A hearing was scheduled for July 19, 1993 to consider whether to approve the settlement of the claims of the Class. The Class members were given the right to object or to express their views at the hearing.

The Milken Global Settlement allocates the Total Recovery among several groups of claimants and $100 million is allocated to claimants listed on Schedule 9, including the Class herein and a class of plaintiffs in *In re Executive Life Litigation Consolidated Policy Holders Class and Actions*, Master File No. 2636, pending in the Superior Court for the State of California, in and for the County of Los Angeles (the *"ELIC Action"* and the *"ELIC Class"*). It is expected, based upon the relative amount of damages alleged, that the substantial majority of the $100 million would be allocated to the ELIC Class, and approximately $2–5 million might be expected to be allocated to the Class herein. If this proposed settlement is rejected, the litigation would continue against the settling defendants and the Class would lose its rights under the proposed Milken Global Settlement.

A judgment approving the settlement here presented will dismiss the claims of the Class against the Settling Participants, with prejudice. That judgment in the federal actions will bar the prosecution of the claims herein in any other forum and will have the effect of dismissing the actions in the California State Court, i.e., actions included on Schedule 9, which also assert claims on behalf of the Class herein, as against the Settling Participants.

### Due Notice to the Class

■ Pursuant to an Order Directing Class Notice Procedures entered in *In re First Capital*, Notices of Pendency of this Class Action and of the proposed Milken Global Settlement and Hearing Thereon were mailed to the members of the Class. Over 498,000 copies of the full printed class action notices were mailed. In addition, a summary notice was published in *USA Today*. The deadline for filing objections to the Settlement was July 6. No objections have been filed to the Settlement in *In re First Capital*. Members of the Class who did not request to be excluded will be bound by the judgment, whether or not favorable to the Class.

Normally, settlement notices need only describe the terms of the settlement generally. *Handschu v. Special Services Division*, 787 F.2d 828, 833 (2d Cir.1986); *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir.1982), *cert. denied* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983) ("notices to class members can practically contain only a limited amount of information"). Here the Settlement Notices went well beyond this minimal requirement and described in detail a variety of important matters relating to the litigation and to the proposed Settlement.

Accordingly, there is no doubt that the form of notice utilized in this case was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

As a matter of law, therefore, the level of detail in the notice here is more than sufficient to apprise the interested parties of the pendency of these actions and afford them an opportunity to present any objections. In fact, the courts have repeatedly sustained notices in cases where the notices included only a very general description of the proposed settlement. *See, e.g., In re Equity Funding Corp. of American Securities Litigation*, 603 F.2d 1353, 1361–62 (9th Cir.1979); *Mendoza v. United States*, 623 F.2d 1338, 1351–52 (9th Cir.1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); *In re Corrugated Cardboard Antitrust Litigation*, 643 F.2d 195, 223–24 (5th Cir.1981), *cert. denied*, 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982). Here, by contrast, the notices included extensive information about

the history of these proceedings and the terms of the proposed Settlement.

### Background to the Milken Global Settlement

The Drexel Burnham Lambert Group, Inc. and its subsidiaries and affiliates ("Drexel" or the "Drexel debtors") was a full service investment banking firm engaged in all facets of the securities business. During the 1980's, Drexel became a principal underwriter, marketer and distributor of High Yield Debt Securities, sometimes referred to as "junk bonds." Michael R. Milken was the head of Drexel's High Yield Bond Department.

In November 1986, the United States Department of Justice and the Securities and Exchange Commission (the "SEC") commenced probes of the operations of Drexel. In 1988, the SEC commenced a civil injunctive action against Drexel, certain members of the High Yield Bond Department and other parties, alleging, among other things, that fraud had been committed by the defendants in connection with various securities transactions.

Numerous civil lawsuits were also commenced against Drexel, Milken and others arising out of the defendants' Drexel-related alleged unlawful conduct. Many of these lawsuits were filed as representative actions on behalf of classes of claimants or derivatively for the benefit of certain public corporations and their investors.

In mid-February 1992, the Judicial Panel on Multidistrict Litigation issued an Order to Show Cause why the claims against Milken and other Settling Participants pending in federal courts throughout the country should not all be transferred to the Southern District of New York before one judge. The Judicial Panel on Multidistrict Litigation subsequently transferred and consolidated all such claims before the undersigned in the United States District Court for the Southern District of New York, including the federal actions filed on behalf of the Class herein.

### The Milken Global Settlement

The existence of the extraordinarily large number of claims against Milken and the other Settling Participants led to a recognition that, absent some form of overall settlement, the plaintiffs and defendants would remain locked in combat for years in courts all over the country. Moreover, not only would the plaintiffs face all the hazards and risks of litigation—including the risk that either liability or damages could not be proven—but even if certain plaintiffs prevailed the recovery of large judgments against Milken and others could well have produced individual bankruptcies, leading to further delays and risks that there would be no recoveries for other plaintiffs, or, at least, very significantly smaller recoveries, than the plaintiffs were hoping to obtain.

As a result, negotiations were undertaken to determine whether it was possible to settle, at one time, all pending and potential claims by Claimants against Michael Milken, approximately 200 former members of Drexel's High Yield Bond Department and Corporate Finance Department and nearly 400 Drexel related partnerships and other entities with which they were associated. This included the claims of the Class Members herein, Drexel's claims, suits by the Federal Deposit Insurance Corporation ("FDIC") and the Resolution Trust Corporation ("RTC") on behalf of numerous failed banks and savings and loan associations (the "FDIC/RTC Actions") and the Drexel Related Claims (as defined below) contained in a vast number of pending cases, and potential Drexel Related Claims which had not yet been asserted.

These negotiations were exhaustive, lasting more than five months, and were closely supervised and monitored by the District Court. The Settling Participants and the Claimants were each separately represented in these settlement discussions through liaison counsel who coordinated with their various constituencies. The parties to the Milken Global Settlement achieved a stipulation for a Global Resolution of more than 180 lawsuits [2] against Michael Milken and a large

---

2. The lawsuits are listed on Schedule 3 to the Milken Global Settlement stipulation dated March 9, 1992, and approved by the Court in the *Drexel* case.

number of "Other Settling Individuals" [3] and "Settling Partnerships." [4]

### Background Facts Relating to In Re First Capital

The First Capital policyholder class actions were originally commenced in separate class actions in the Spring of 1991 in various district courts throughout the Nation including the Southern and Eastern Districts of New York, the Southern District of Ohio and the Northern and Central Districts of California. Additional actions were filed in state courts. The federal actions were consolidated by order of the Judicial Panel on Multidistrict Litigation under Docket No. 901. The cases were brought to recover damages sustained by policyholders of First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company policyholders resulting from the insurance companies' allegedly fraudulent or reckless investment and financial practices, and the manipulation of the Company's financial statements. As a result of this alleged wrongdoing, First Capital and Fidelity Bankers' policyholders allegedly experienced a reduction in the value of their policies.

Named as defendants in In re First Capital were First Capital Holdings' former directors and officers as well as Shearson Lehman Brothers, Inc. (f/k/a Shearson Holdings, Inc.) and American Express Company, which defendants previously entered into a settlement with the plaintiff Class. Also named as defendants were Michael R. Milken, Lowell Milken and Roy Johnson, who are settling at this time. In addition, Eden Financial Group, Inc. (d/b/a Eden Insurance Group), Hall & Company and A.M. Best Co. were named as defendants. The action alleged claims against the defendants for violation of §§ 10(b) and 20 of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78j(b) and 78t], and Rule 10b–5 promulgated thereunder, as well as claims for violations of Civil RICO, fraud and deceit, negligent misrepresentation, unfair business practices and false advertising.

Pursuant to the settlement with the Shearson Defendants, a plan of Rehabilitation of FCLIC has been provided pursuant to which FCLIC policyholders are to receive 100% of the account value of their policies provided they do not surrender or terminate them during the Rehabilitation Period, and those who cash out their policies within that period will receive a percentage of the value of their accounts which increases from 75% to 95% on a yearly basis, plus their annual 10% withdrawal without penalty. Further, pursuant to the settlement, the Shearson Defendants agreed that releases from the Class of Fidelity policyholders was conditioned upon approval of a plan of rehabilitation for Fidelity at least as favorable as FCLIC's plan of rehabilitation. Additionally, pursuant to that settlement the Shearson Defendants created a $3 million settlement fund to compensate policyholders who had surrendered their insurance products and suffered a loss. The amounts to be allocated to the Class herein from the Milken Global Settlement will augment the recoveries on behalf of the FCLIC Class and the Fidelity Class.

The In re First Capital action was previously certified for the purposes of the prior settlement with the previous settling defendants by Judge John S. Davis, of the United States District Court for the Central District of California and by Judge William C. Pate, of the Superior Court for the State of California for the County of San Diego. The federal actions on behalf of the FCLIC Class and the Fidelity Class has been certified conditionally herein for the purposes of the proposed Milken Global Settlement only, as a class action for settlement purposes pursuant to Rule 23 of the Federal Rules of Civil Procedure against Michael R. Milken, Lowell Milken, and Roy Johnson on behalf of a class (the "Class") consisting of:

> Any person (except defendants, members of the immediate families of each of the individual defendants, any entity in which any defendant has a controlling interest, or which controls a defendant, and the legal representatives, heirs, successors or as-

---

3. The Other Settling Individuals are identified on Schedule 1 to the Milken Global Settlement stipulation.

4. The Settling Partnerships are identified on Schedule 2 to the Milken Global Settlement stipulation.

signs of any excluded party are expressly excluded from the Class) which is the owner or assignee of a life insurance contract or annuity contract issued by First Capital Life Insurance Company or Fidelity Bankers Life Insurance Company or who surrendered any such contract between January 1, 1990 and May 14, 1991, excepting those persons who timely and validly request exclusion.

### Nature Of The Claims Being Settled

The claims of the Class being settled involve allegations of wrongdoing asserted on behalf of the Class herein in the Complaint in the Consolidated Class Action Complaint in *In re First Capital Holdings Corp. Financial Products Securities Litigation* MDL No. 901 (C.D.Cal.) (which includes claims, *inter alia*, that defendant Michael R. Milken, Lowell Milken and Roy Johnson breached fiduciary duties, made negligent misrepresentations, committed fraud and deceit, and negligence, and unfair business practices, violated the consumer Legal Remedies Act, obtained unjust enrichments and violated the Securities Act of 1933 and the Securities and Exchange Act of 1934. Also being settled are all the other claims of the various Claimants which are "Drexel Related Claims" against all Settling Participants. Drexel Related Claims are defined in the Milken Global Settlement as follows:

"*Drexel Related Claims*" shall mean, with respect to each Settling Participant and each member of the Settling Participant Group all (a) claims made in the Actions or the [*Presidential Life* ] Action, (b) actual or potential, and all known or unknown, claims based upon allegations of the type giving rise to the claims made in any of the Actions or the [*Presidential Life* ] Action and that relate to, arise out of, or are based upon the business or activities of Drexel or any of its majority-owned Affiliates, or employment with, or services (whether or not such services are allegedly *ultra vires* ) rendered to, or performed by, Drexel or its majority-owned Affiliates, or (c) actual or potential, and all known or unknown, claims involving providing or failing to provide any services to, or the exercise of responsibility as, an attorney, accountant, consultant, employee or general or managing partner of, Drexel, any majority-owned Affiliate of Drexel, or, with respect to the business or activities of Drexel, any partnership or other entity or individual included as a Settling Participant, a member of the Settling Participant Group or an Identified Settling party, whether or not such activities are allegedly *ultra vires*.

Counsel for the Class have made a thorough investigation into the facts and circumstances relevant to the claims against the Settling Participants and have engaged in extensive negotiations with respect to the proposed settlements, under the supervision of the District Court. Counsel for the Class fully endorse the settlements and recommend their approval.

In evaluating the proposed Milken Global Settlement plaintiffs' counsel have considered the merits of the claims and defenses and the risks of litigation; the time and expense necessary to prosecute the Claims through trial and appeals; the procedural and logistical difficulties in proceeding with litigation in an environment of massive competing claims; the risks of collection of judgments and the substantial and present benefits of settlement. Weighing such factors, Class Counsel have asserted their belief that believe the settlement is fair, reasonable and adequate as to the members of the Class.

There has been no judicial determination of the merits with respect to the claims asserted against Milken or any claims which the Class may have against the other Settling Participants. By entering into the Milken Global Settlement stipulation the Settling Participants have not admitted any wrongdoing or liability to the Class herein or to the Claimants as a group. The District Court has not determined the merits of the Claims Asserted by the Class or the Defenses of the Settling Participants.

### Injunction Against Institution Or Prosecution Of Actions Pending Effectiveness Or Termination Of Milken Global Settlement

Pursuant to the terms of the Milken Global Settlement an Order was entered on April 3, 1992 in the Drexel Bankruptcy Proceedings

enjoining plaintiffs in all the actions participating in the Milken Global Settlement, including the Class in this Action, from further prosecution of those actions against the Settling Participants and from commencing any new actions asserting Drexel Related Claims against any of the Settling Participants unless and until the Milken Global Settlement is terminated in accordance with its terms. In addition a permanent injunction was entered on July 17, 1992 in the *Presidential Life* action barring and enjoining all members of the *Presidential Life* class (who have not excluded themselves from the *Presidential Life* class) from commencing or prosecuting any claim that has been or could have been asserted in the Pending Drexel Related Milken Litigation and further barring and enjoining all members of the *Presidential Life* class (including those who excluded themselves from the *Presidential Life* Class) from commencing or prosecuting, in any court or forum (federal or state) other than the District Court, any proceeding that challenges or seeks review of or relief from any act, decision or ruling of the District Court in connection with these actions, and further providing that any violation of the foregoing injunction is punishable as a contempt of Court, in addition to all other available remedies.

### Attorneys' Fees

No attorneys' fee application are to be made on behalf of counsel for the plaintiff Class at this time. Plaintiffs' Counsel anticipate presenting their fee petition only after the Effective Date of the Milken Global Settlement and after an allocation from the Settlement Fund has been made for the Class herein for the Schedule 9 cases from the Milken Global Settlement. The fee petition will be on notice to the Class.

### The Hearing

The hearing directed by the Court hereon was duly held on July 19, 1993. No appearance in opposition was made by any Class member. Those claimants who elected to opt-out of the Settlement duly filed their elections, and they are now barred from any participation in the benefits thereof.

### The Proposed Settlement Is Fair, Reasonable and Adequate

The proposed Milken Global Settlement has created a substantial benefit for *In re First Capital*, viewed in light of the substantial legal and factual hurdles which the Class plaintiffs would have been required to overcome with respect to both liability and damages. Proof of liability would require complicated evidence of Milken's contact and involvement in the determination of First Capital Holdings' subsidiaries investment portfolios, the manipulation of the High Yield Bond market, and the truth or falsity of the statements made by First Capital Holdings and its subsidiaries. In addition to the difficulties plaintiffs faced in showing liability, plaintiffs faced grave issues concerning damages, especially since the rehabilitations of First Capital and Fidelity Bankers have virtually made policyholders whole. Achieving the settlement at this juncture assures that *In re First Capital* will receive a substantial recovery from the settlement and will avoid years of uncertain litigation and competition for the limited, albeit substantial, assets of the defendants.

The standards governing approval of class action settlements are well-established in this Circuit. In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974) (*"Grinnell "*), the Second Circuit Court of Appeals held that the following were factors to be considered in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement....; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment ...; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.... (citations omitted.)

Thus, the District Court must evaluate the fairness of the proposed Settlement in light of the potential recovery and the risks of further litigation. In addition, the Court should take into consideration that the Settlement was reached after arm's-length negotiations among counsel authorized to act on behalf of the respective parties and that the reaction of the Classes and the shareholders, after being adequately notified of the Settlement and of the opportunity to object, has been very positive. *Grinnell*, 495 F.2d at 462; *Weinberger v. Kendrick*, 698 F.2d at 73; *Malchman v. Davis*, 706 F.2d 426, 433–34 (2d Cir.1983), *aff'd as modified* 761 F.2d 893 (2d Cir.1985), *cert. denied*, 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986).[5]

In weighing the foregoing factors, the Court should further consider that the law favors and encourages the settlement of class action suits. *Weinberger v. Kendrick*, 698 F.2d at 73; *State of West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1085 (2d Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971).[6] In evaluating the settlement of a securities class action, the courts have long recognized that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y.1973).

The approval of the proposed settlement of a class action or a derivative suit is a matter of discretion for the trial court. *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). In exercising that discretion, the Court should recognize that, as a matter of sound policy, settlements of disputed claims are encouraged. *Williams v. First National Bank of Pauls Valley*, 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910); *Florida Trailer and Equipment Co. v. Deal*,

284 F.2d 567, 571 (5th Cir.1960); *Masterson v. Pergament*, 203 F.2d 315, 330 (6th Cir.), *cert. denied*, 346 U.S. 832, 74 S.Ct. 33, 98 L.Ed. 355 (1953).

The ultimate test for the exercise of the Court's discretion in approving a settlement of a class action pursuant to Rule 23 is whether the settlement, taken as a whole, is fair, adequate, and reasonable. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25, 88 S.Ct. 1157, 20 L.Ed.2d 1, *reh'g denied*, 391 U.S. 909, 88 S.Ct. 1649, 20 L.Ed.2d 425 (1968); *Malchman v. Davis*, 706 F.2d at 433; *State of West Virginia v. Chas Pfizer & Co.*, 314 F.Supp. 710, 740 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971).

In addition, the Court should not engage in a trial of the merits when considering the prospects of success in the litigation. *Newman v. Stein*, 464 F.2d at 692; *Republic National Life Insurance Company v. Beasley*, 73 F.R.D. 658, 668 (S.D.N.Y.1977) (Pollack, J.) ("In evaluating the proposed settlement, the Court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion").

It must also be recognized that victory even at the trial stage is not a guarantee of ultimate success. *See, e.g., Berkey Photo, Inc. v. Eastman Kodak Co.*, 457 F.Supp. 404 (S.D.N.Y.1978), *aff'd in part, rev'd in part*, 603 F.2d 263 (2d Cir.1979), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980), in which a multimillion dollar judgment was reversed.

---

5. *See also Breiterman v. Roper Corp.*, [1989–1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,885, at 94,831 (S.D.N.Y. January 12, 1990); *Duban v. Diversified Mortg. Investors*, 87 F.R.D. 33, 38–39 (S.D.N.Y.1980); 7B Wright & Miller, *Federal Practice and Procedure: Civil*, § 1797.1 (2d Ed. 1986).

6. The law in other Circuits is in accord. For example, the Fifth Circuit has stated: "Particularly in class action suits, there is an overriding public interest in favor of settlement. It is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977) (citations omitted). *See also Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir.1981), *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir.1982); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.1976).

■ In appraising the fairness of a proposed settlement, the view of experienced counsel favoring the settlement is "entitled to great weight." *Josephson v. Campbell* [1967–1969 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,347, at 97,658 (S.D.N.Y. January 24, 1969); *see also Boggess v. Hogan,* 410 F.Supp. 433, 437 (N.D.Ill.1975); *Entin v. Barg,* 412 F.Supp. 508, 515 (E.D.Pa.1976). The court should not substitute its business judgment for that of the parties. *See Cooper v. Lewson,* [1978 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 96,329 at 93,099 (S.D.N.Y. January 31, 1978); *Ochs v. Ruttenberg,* 446 F.Supp. 145, 148 (S.D.N.Y.1978); *Burger v. CPC International, Inc.,* 76 F.R.D. 183, 188 (S.D.N.Y.1977); *Schleiff v. Chesapeake and Ohio Railway Co.,* 43 F.R.D. 175, 178 (S.D.N.Y.1967). *See, e.g., Siegel v. Realty Equities Corp. of New York,* [1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,102 at 94,446, 1973 WL 414 (D.C.N.Y. July 30, 1973) (Court found itself "in no position to substitute its judgment for that of honest and competent attorneys, who ... have made a determination that the settlement represents a fair and realistic appraisal of their clients' chances of ultimate success").

■ There is thus a strong initial presumption that the compromise is fair and reasonable. *See, e.g., Katz v. E.L.I. Computer Systems, Inc.,* [1970–1971 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,994, at 90,676, 1971 WL 251 (S.D.N.Y. April 15, 1971); *Josephson v. Campbell,* [1967–1969 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,347 at 97,658 (S.D.N.Y. January 24, 1969); *Wittner v. Ghen,* [1969–1970 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 92,502, at 98,352, 1969 WL 2847 (S.D.N.Y. October 27, 1969).

### Potential Recovery and Defendants' Ability To Pay

■ Pursuant to *Grinnell,* the court may consider the value of the proposed Settlement in light of the potential recovery and the ability of the Settling Participants to withstand a greater judgment. The Milken Global Settlement provides for a total settlement fund of $1.3 billion. The Schedule 9 claimants (including the Class herein and the *ELIC Class*) are to receive $100 million, which will be allocated to the Class herein and the *ELIC Class* pursuant to further proceedings.

As a result of the settlement approved last year in the *In re First Capital* actions and the rehabilitation proceedings of First Capital Holdings insurance subsidiaries, policyholder damage claims have been dramatically mitigated to the point where many policyholders now stand to receive the "benefit of their bargain." Conversely, the ELIC Class claims are huge, totalling in the billions of dollars.

■ The Settlement is very beneficial to the Class because the Settling Participants' assets, while substantial, are nevertheless limited, as best as can be ascertained, especially viewed in light of the huge claims being asserted by all alleged creditors. More significantly, were the class plaintiffs required to litigate concerning their rights to the assets, such efforts would severely erode the assets available to satisfy any judgments. Thus, it was clearly possible that the class plaintiffs could have expected to obtain *smaller* or no recoveries from the Settling Participants, had they continued to litigate their claims rather than settling now.

The Milken Global Settlement may be found reasonable even though the total value to be allocated to and recovered by the Class cannot presently be determined. *See Cotton v. Hinton,* 559 F.2d 1326, 1334 (5th Cir.1977). *See also Ibarra v. Texas Employment Commission,* 645 F.Supp. 1060, 1073 (E.D.Tex. 1986), *rev'd on other grounds,* 823 F.2d 873 (5th Cir.1987). The determination of what constitutes a "reasonable" settlement is not susceptible of a mathematical equation yielding a particularized sum. Rather, as Judge Friendly has explained, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein,* 464 F.2d at 693; *see also Zerkle v. Cleveland–Cliffs Iron Co.,* 52 F.R.D. 151, 159 (S.D.N.Y.1971); *Glicken v. Bradford,* 35 F.R.D. 144, 152 (S.D.N.Y.1964).

The Second Circuit has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought. *Grinnell,* 495 F.2d at 455.

"The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Id.* (footnote omitted). The Court explained: "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n. 2. In the District Court decision in *City of Detroit v. Grinnell Corp.*, 356 F.Supp. 1380, 1386 (S.D.N.Y.1972), *aff'd in part, rev'd in part*, 495 F.2d 448 (2d Cir.1974), Judge Metzner found a proposed settlement of 3.2% to 3.7% of the potential recovery " 'well within the ball park'." Clearly the Settlement here is well within the "range of reasonableness."

Nor is there any impediment to approval of the Milken Global Settlement because the actual amounts to the *In re First Capital* Class will be subject to further allocation procedures. *In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910, 925 (S.D.N.Y. 1991) *aff'd*, 960 F.2d 285 (2d Cir.1992) ("It is not an impediment to approval of the Settlement that the actual amounts to be distributed to Class members will be subject to further allocation procedures."). In *In re Agent Orange Product Liability Litigation*, 818 F.2d 145, 170 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988), the Court affirmed the approval of a settlement of a complex class action notwithstanding that a plan of distribution had not yet been adopted, holding (at 170) that:

> To impose an absolute requirement that a hearing on the fairness of a settlement follow adoption of a distribution plan would immensely complicate settlement negotiations and might so overburden the parties and the district court as to prevent either task from being accomplished.

Allocation procedures are being developed in order to fairly protect the interests of each of the plaintiffs in the Schedule 9 actions. In addition, the procedures, which will govern distributions of the Settlement proceeds, including the Milken Civil Disgorgement Fund, will be subject to evaluation and approval by the SEC and will be subject to the Court's approval. Thus, adequate safeguards exist to provide that plaintiffs will be fairly and adequately compensated out of the Milken Global Settlement.

In *In re Washington Public Power Supply System Securities Litigation*, [1989 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,326, at 92,143, 1988 WL 158947 (W.D.Wash. July 28, 1988), the District Court approved a class action settlement even though the amounts of the settlement allocable to the class members were required to be determined by further Court Orders. In this regard, the Court stated:

> Such deferral of allocation decisions is routinely followed in partial settlements where the appropriate allocation among class members can best be determined when further settlements have been achieved or the litigation is completely resolved.

*Id.*, citing *In re NuCorp Energy Securities Litigation*, 661 F.Supp. 1403 (S.D.Cal.1987); *In re Chicken Anti-Trust Litigation*, 560 F.Supp. 957, 959 (N.D.Ga.1980), *aff'd*, 669 F.2d 228 (5th Cir.1982).

In numerous cases courts have approved settlements where the class members receive different percentages of recovery to take into account different factors. *In re Agent Orange Product Liability Litigation*, 611 F.Supp. 1396 at 1411 (E.D.N.Y.1985), *modified on other grounds*, 818 F.2d 179 (2d Cir.1987) (the District Court's opinion found that "if one set of claims had a greater likelihood of ultimate success than another set of claims, it is appropriate to weigh 'distribution of the settlement ... in favor of plaintiffs whose claims comprise the set [of claims]' that was more likely to succeed"); *In re Equity Funding Corp. of America Securities Litigation*, 603 F.2d 1353, 1363–67 (9th Cir.1979) (holding that the trial court, in its effort to fairly allocate settlement funds among class members, did not abuse its discretion in approving an offset provision of a plan of allocation which took into account the receipt of money and stock by certain debenture holders in prior related reorganization proceeding); *see also In re Investors Funding Corp. of New York*, 9 B.R. 962, 965 (D.C.N.Y.1981).

*Opinions Of Counsel*

■ The plaintiffs are represented by the Law firm of Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss") and other law firms. This Court has previously recognized that Milberg Weiss is a firm of highly competent and experienced attorneys. In the opinion of counsel for the plaintiff, both the Settlement, and the probable allocation of the proceeds of the Settlement to the Schedule 9 Actions are fair, reasonable and adequate.

Experienced counsel's opinions are entitled to substantial weight by the Court in determining whether to approve the Settlement. *Weinberger v. Kendrick,* 698 F.2d at 74. As this Court stated in *Republic National Life Insurance Co. v. Beasley,* 73 F.R.D. 658, 668 (S.D.N.Y.1977) (Pollack, J.):

> [The] determination of what amount of money constitutes a fair settlement is not a matter of mathematical science. On the one hand perhaps plaintiff's counsel have obtained more ... than a jury would award; on the other hand, it may be less. The court is in no position to substitute its judgment for that of honest and competent attorneys, who ... have made a determination that the settlement represents a fair and realistic appraisal of their clients' chances of ultimate success. *Siegel v. Realty Equities Corp.,* [1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,102, at 94,-446 (S.D.N.Y. July 30, 1973).

Similarly, in *Josephson v. Campbell,* [1967–1969 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,347, at 97,658 (S.D.N.Y. January 24, 1969) the Court held:

> There is a strong initial presumption that the compromise is fair and reasonable. This rests on a number of factors. Counsel for plaintiff is able and experienced, particularly in the specific area with which these actions are concerned. His judgment is entitled to great weight.

*Accord Lyons v. Marrud,* [1972–1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,525 at 92,519, 1972 WL 327 (S.D.N.Y. June 6, 1972); *Cannon v. Texas Gulf Sulphur Co.,* 55 F.R.D. 308 (S.D.N.Y.1972). *See also Ochs v. Ruttenberg,* 446 F.Supp. at 148; *Schlusselberg v. Keystone Custodian Funds Inc.,* [1973 Transfer Binder] Fed.Sec.L.Rep.

(CCH) ¶ 93,901, at 93,612, 1973 WL 375 (D.C.N.Y. March 15, 1973); *Josephson v. Campbell,* ¶ 92,347, at 97,658; *Schleiff v. Chesapeake and Ohio Ry.,* 43 F.R.D. at 179; *Fox v. Glickman Corp.,* 253 F.Supp. 1005 (S.D.N.Y.1966); *Cherner v. Transitron Electronic Corp.,* 221 F.Supp. 48, 51 (D.Mass. 1963). Accordingly, counsels' belief that the Milken Global Settlement is fair, reasonable and adequate in light of the possible recovery is a significant factor supporting its approval.

*Complexity, Expense And Likely Duration Of The Litigation*

■ Absent the Milken Global Settlement, over 180 separate lawsuits would have to be tried to determine the Settling Participants' liabilities. This might cause the filing of numerous bankruptcy petitions. Further collateral litigation would also be required to determine the priority of claims among the plaintiffs eventually successful in obtaining final judgments against any of the defendants. In light of the substantial settlement proposed, this is clearly a case where litigations through trials and appeals would be hazardous, wasteful, needlessly expensive and could substantially reduce the amounts available by settlement. The complexity, expense and likely duration of litigation are all factors that the Court should consider in approving the proposed settlement. *Grinnell,* 495 F.2d at 463. Avoiding wasteful litigation and expense are factors which "lay behind the Congressional infusion of a power to compromise." *Florida Trailer and Equipment Co. v. Deal,* 284 F.2d 567, 571 (5th Cir.1960); *State of West Virginia v. Chas. Pfizer & Co.,* 440 F.2d at 1085. In particular, given the significant mitigation of the damages claimed already, there is substantial uncertainty whether the complexity and expense of further prosecution would, under the circumstances, be in the Class' interest.

*Risks Involved In Maintaining The Class Action Through Trial*

■ *Grinnell* holds that in assessing the fairness, reasonableness and adequacy of the settlement, the Court should consider such factors as the "risks of establishing liability,"

"the risks of establishing damages," and "the risks of maintaining the class action through the trial." *Grinnell*, 495 F.2d at 463 (citations omitted).

Here, of course, the Milken Global Settlement actually consists of numerous separate claims against the Settling Participants. Many of these are class and/or derivative claims, and, in numerous instances, the Settling Participants are not the only defendants in complex litigations existing in state and federal courts throughout the country.

Because intensive litigation efforts afforded the parties an opportunity to assess the strengths and weaknesses of the litigation in negotiating the proposed Settlement, the Court is entitled to give significant weight to this consideration. *E.g., Schlusselberg v. Keystone Custodian Funds, Inc.,* [1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,901, at 93,612, 1973 WL 375 (S.D.N.Y. March 15, 1973); *Robertson v. National Basketball Ass'n,* 72 F.R.D. 64, 70 (S.D.N.Y. 1976), *aff'd,* 556 F.2d 682 (2d Cir.1977); *Fox v. Glickman Corp.,* 253 F.Supp. 1005, 1012–13 (S.D.N.Y.1966).

### Conclusion

The Court finds that the proposed Settlement in *In re First Capital* is entirely reasonable, fair, and adequate in all respects, and that the Settlement should be and hereby is approved in all respects and directs consummation accordingly. A separate ruling will be made as to the allowable expenses in connection therewith, A judgment accordingly should be submitted to the Court for its consideration and signature.

SO ORDERED.