94 F.3d 65
 PRESIDENTIAL LIFE INSURANCE COMPANY, Plaintiff-Appellee,
TLC Beatrice International Holdings, Inc., Movant-Appellant,
v.
Michael R. MILKEN; Roy Abbott; Paul Abecassis; Jack
Ackerman; Peter Ackerman; Joseph P. Adams; Steven
Andreder; Joel Asen; Andrew Astrachan; Mark Attanasio;
Eileen Austen; Herbert Bachelor; Stanley Bailowitz;
Jeffrey Balash; Donald Balser; Dan Bathon; Jeffrey P.
Beck; Joseph Bencivenga; Richard A. Bergman; David W.
Bergmann; Martin L. Berman; Robert D. Beyer; Paul
Biddelman; Arthur H. Bilger; Leon Black; Jay Bloom;
Frederick Borden; Thomas Boudakian; Gerald Brodsky;
William Bron; Bruce Brown; Michael D. Brown; E. Alan
Brumberger; Gerard M. Bucci; Jon E. Budish; Dort A.
Cameron, III; Thomas Cauchois; John Cavalier; Jeffrey
Chanin; Mark Chasin; Franklin Chu; John Chulick; Thomas
P. Clerkin; Craig M. Cogut; Thomas Connors; Richard
Crowell; Lorraine D'Ambrosio; James Dahl; Charles Dargan;
Robert Davidow; Marshall Davidson; Logan D. Delany, Jr.;
Carl Deremer; Dennis Dolan; Scott Douglas; Richard
Dunler; David DuPont; Maurits Edersheim; William Eng;
Donald Engel; Chris Evensen; Robert Fallon; Geoffrey L.
Faux; David Feinman; Michael Fields; Ralph Finerman;
Alan J. Fishbein; Steven Fisher; Patrick Flanagan; Allen
Flans; Richard S. Frary; Joshua Friedman; William Frymer;
Dennis K. Galgano; Peter R. Gardiner; Bruce Garver;
Richard L. Gelfond; Michael E. Gellert; Joel L. Gold;
Mark Goodman; Robert Goodwin; Nancy Cates Gordon; Kevin
J. Gorman; Patrick L. Graham; Jeffrey Green; Richard
Handler; John J. Hannan; Joseph Harch; Reed L. Harman;
Scott Harrison; David Hedley; Andrew Heyer; J. Ericson
Heyke III; Paul Higbee; Richard H. Hochman; Harry
Horowitz; John Humphreville; Susan Humphreville; Jay
Jablonow; Jon Jetmore; Paul Jetter; Roy J. Johnson; Lisa
Jones; Roger Jospe; Mitchell R. Julis; Edwin Kantor;
Steven J. Kantor; David Kay; Dean Kehler; Donald Kendall;
David Kiarsis; John Kissick; Barry F. Klein; Robert
Kline; Lynne Knox; Gerald Koenig; Gerald Koerner; Robert
I. Kohl; John Krasznekewicz; John A. Ladyzinski; Graciela
Lagumen; Anthony Lamport; Jeffrey Lane; Jack Langer;
Douglas Lehrman; Paul Levy; Trevor Lewis; Robert Lloyd;
Bridgette S. Loden; Kevin J. Madigan; Joel Mael; J.O.
Maggard; Mary Lou Malanoski; Alison J. Mass; Cary J.
Maultasch; Frederick McCarthy; Douglas McClure; John
McMahon; Leonard Meads; Lori Milken; Lowell Milken;
Michael Milken; Sandra Milken; David Mills; Kenneth
Moelis; James Moglia; Pamela Monzert; John Moriarty;
Frederick Moseley; Philip W. Moss; Donald Mullen; Allen
Nadler; Jeffrey L. Neuman; Richard Nevins; Bruce
Newberg; Thomas Noonan; Terren S. Peizer; Arthur
Phillips; Lawrence A. Post; James D. Price; Harold
Purkey; Bruce Raben; Joseph J. Radecki; Michael Ranger;
Marc Rapaport; Paul Rapisarda; Jess M. Ravich; James L.
Rawlings; Langhorne Reid, III; Thomas E. Reinhart;
Anthony Ressler; Barry W. Ridings; Randy Rock; Richard
Rosee; Naomi Rosenfeld; Alan E. Rosenthal; Stephen Roth;
Peter Rothschild; Richard V. Sandler; Patrick Savin;
Sylvan Schefler; James Schiffner; Nicholas Schlumberger;
James A. Schneider; Kevin W. Schultz; Janice L. Shapiro;
Allyson Shields; Ruben Shohet; Jonathan D. Sokoloff; John
Sorte; Lorraine Spurge; Linda Stedman; Stanley Stein;
Lee Stern; James G. Sullivan; David Sydorick; Cathryn
Taylor; John Taylor; Marla Thomas; Charles A. Thurnher;
William R. Tobey, Jr.; Warren Trepp; Stanley Trotman;
Olivier Trouveroy; Marc A. Utay; Patsy Van Utt; George
Varughese; Edward G. Victor; James E. Virtue; Leon
Wagner; Sven Wehrwein; Jeffrey R. Weinhuff; Stephen D.
Weinroth; John Wexler; Henry M. Wilf; Alexa D. Willson;
Gary Winnick; Stephen Winningham; Eugene Wong; David
Ying; Ronald N. Yurcak; AFP Investments; AHP Holdings,
Inc.; AHP Investments; Alamo Associates; Alamo
Investments L.P.; All-Fed Investment Associates; Alta
Associates; Anchor Capital Holdings; ARA Partnership;
Arete Partners; Argonaut Ventures Group; Armacor
Incorporated; Arrowlake Investors; Arroyo Pacific
Investments, L.P.; Associated Capital; Associated
Investors; Atlantic Financial Investors; Atlantic
Management Group; Baltmar Investors, L.P.; Bandelier
Associates; Barid Corporation; Barlem Associates; Barrows
Associates; Bass Investment L.P.; Bayberry Financial
Group, Inc.; BCP Capital Partners, a California Limited
Partnership; BCP Capital Partners L.P.; BCP Capital
Partners II, L.P.; Beaumont Holdings; Beauty Care
Partners; Berry Associates; Belvedere Securities;
Bergman, Knox & Green; Bering Associates; Bicoast
Investment Associates; Biscayne Capital L.P.; BMA Limited
Partnership; Brittany Holdings; Buel's Gore Associates;
Cabat Associates Ltd.; CACF Partners Ltd.; Calco United
Investors; Cambrent Associates; Cambrent Financial Group,
Inc.; Cambridge Associates; Camden Investments; Camont
Associates; Camont Investments, Inc.; Camro Associates;
Camro II Associates; Canterbury Group; Capital Coast
Partners; Capital First Investors; Capital Fund
Foundation; Capital Investments; Captran Venture
Associates; Cardiff Associates; Carlton Investments;
Carlyle Associates; Carlyle II Associates; Carthaway
Investments; Cavalier Associates; Centennial Financial;
Century Institutional Advisors; CFD Partners '81;
Champlain Associates; Chanticleer Investors, Ltd.;
Cheatham Capital; Chesapeake Partners; Chessment
Investment Associates, a California Limited Partnership;
Chessment Investors, L.P.; Chesterfield Investments;
Chesterfield Ventures Fund Co.; Chieftan Investments
Capital Corp.; Childress Group, Inc.; Childress High Yield
Fund; Chittenden Associates; Clayton & Dublier Private
Equity Fund Ltd.; Clayton & Dublier Private Equity Fund II
Ltd.; Clayton & Dublier Private Equity Fund III Ltd.; CLC
Financial Partners, L.P.; CLC Investors, L.P.; Cleburne
Enterprises; Coast Holdings; Coastal Capital Partners;
Color Tile Investments; Commercial Management Co., L.P.;
Commonwealth Equities; Commonwealth United; Concordia
Investment Associates; Conport Associates, a California
Limited Partnership; Contera Partners; Continental
Associates L.T.D.; CR Associates; Crescent Capital
Associates; Cristal Partners; Dalton Associates; Dayton
Investments; DBL Employee Profit Sharing Plan Vol.
Cont. A/C #1; DBL Transcap Partners; Delphin Investment
Associates; Demeter Capital Corp.; Dencal Partners;
Denslow Financial Associates; Dickinson Associates;
Downingville Associates; DR Capital Partners; Drexel
Reliance Capital Group Partnership, DRJ Associates; Dunmore
Partners; Dunmore Partners Ltd.; Dunstable Investments;
Durant Financial Associates; EBOC Associates; EJ
Associates; Elmwood Investments; Elstead Partners;
Embassy Capital Group Inc.; Ensign National Association;
Essex Financial; Execor, Incorporated; Fairfield
Investment Group, Ltd.; Fairwood Investments, Inc.;
Fairwood Partners; Field Ranch, Inc.; Fillmore Financial;
Financial Associates; Financial Investments; Financial
Partners; Financial Partners II; Finfund Management L.P.;
Fircon Partners; Firebird Investments; First Alliance
Financial; First Alliance Investments; First Brittany
Holdings Inc.; First Coastal Associates; First Financial
Partners; First General Financial; First Guardian
Enterprises Inc.; First Management Co; First Stratford
Inc; First Stratford Life Insurance Co; First Union
Investments; Foreman Associates; Framingham Investments;
Framingham Partners; Fulton Partners; F.O.L. Holdings;
Galway Investments Associates L.P.; GC Partners; General
Financial; Glenbay, Inc.; Glencoe Investors, L.P., f/k/a
First Guardian of Texas, L.P.; Gloucester Asset Management;
Gotham Capital; GPI Associates; Greystone Partners;
Guardian Equity, a California Limited Partnership; Guardian
Global Associates; Guardian Global Incorporated; Guildford
Capital; Hammond Associates; Hanover Investment
Associates, L.P.; Hastings Associates; Hatton Hall
Associates; Haywood Investments; Hemisphere Capital;
Heritage Capital; Heritage Hall Investments; Hillside
Capital; Holland Partners; Hopkins Associated; Hudson
River Associates; Hybon Corporation; IDS Investment
Associates; Incon Associates; Interconsolidated Investors;
International Consolidated Associates, L.P.; Investment
National; JEJ Partnership; Jellicle Associates; JMP
Associates; JMP Investors; JP Associates; Kidpix
Associates; Kingsley Partners, a California Limited
Partnership; Kraft Associates; L Holdings Investment; L &
S Trust; Lafayette Associates; Lahus V Syndicate, Inc.;
Lambda Capital Corp., L.P.; Lambda CFD '87 L.P.; Lambda I
Capital Partners; Lambda II; Lambda II Capital Partners;
Lambda II Private Investment Account; Lambda III; Lambda
III, L.P.; Lambda III Capital Partners; Lambda III Fund;
Lambda III Private Placement; Lambda Private Placement;
Lambda Private Placement Account; Lambda Partners, Ltd.;
Lambda Private Investment Account; Lennox Investors; LMAR
Partners; Lobon Associates; Lombardi Equities; Lorsand
Partnership; L & S Milken Foundation; M and L Milken
Foundation; Macpherson Investment Partners; Macpherson
Management Associates; Macson Investments, Inc; Magtek
Partners, L.P.; Malaga Capital, L.P.; Manchester
Investments, L.P.; Marglen Associates; Marglen Inc.;
Marley Holdings, L.P.; McCook Financial Enterprises;
Meridian American, Inc. (CAL Meridian (in CA)); Merrick
Associates; Merrimac Fixed Assets; Metro Associates; MIAD
Partners; Milken Family Foundation; Milow Corporation; ML
Associates; ML Portland Associates, Ltd; ML-SL
Incorporated; Model Investment Associates; Monitor Equity,
L.P., a California Limited Partnership; Monmouth Partners;
Monogram Financial Investments, a California Limited
Partnership; Montaigne Enterprises; Montgomery Partners;
Monument Capital L.P.; Moredon Partners, Ltd; Motel
Investments L.P.; MVS, Ltd; M & L 1981 Trust; Neilson
Partners; New CWT PARTNERS; New Levitz Associates, a
California Limited Partnership; 9560 Associates, Ltd;
Ocelot Associates; OP Capital Partners, L.P.; Optimus
Financial Associates; Otter Creek Associates; Owens
Capital; Ozark Investment Group; Pace Investments, L.P.;
Pacific Asset Advisors; Pacific Asset Corporation; Pacific
Asset Holdings L.P.; Pacific Asset Management Inc.;
Pacific Assets Partnership; Pacific Continental Partners;
Pargon Asset Holdings; Parco, Inc; Parco International,
L.P.; Parco Partners; Picardy Financial; Pier Port
Investment Management; Pollicle Capital; Porter & Jenkins
Enterprises; Premier Paragon Partners (Gothic); Prime
Assets Corporation; Prime Capital Associates; Prospero
Asset Management, L.P.; Prospero Assets, Inc.; Prospero
Partners; Purnell Associates; Quadpics Enterprises Inc.;
Ra Partnership; Raleigh Investment Management; Ramstar
Investments Inc.; Rayburn Associates; Real Property
Associates; Regency Equities Corp.; Regency Equities Corp.
Stockholders Liquidating Trust; Reliance Associates;
Reliance Capital Group, L.P.; Remington Financial;
Resource Investors; Revell Investments, L.P.; RJ-LG
Company, Inc; Roblar Associates; ROCAM Associates; ROCAM
II Associates; Rodeo-Wil Associate, Ltd; Romont
Associates; Romont Investments, Inc; RWLC Partners;
Salisbury Enterprises, L.P.; Samurai Associates; Saxon
Associates; SCI Associates; SCI Capital Associates, L.P.;
SCI Partners; SDIC Associates, Ltd; Second Financial
Partners; Second General Financial; Sendel Partners;
Sherbrooke Associates; Sheridan Associates; Sherwood
Financial; Shoreglen Associates; Shoreglen II Associates;
South Coast Partners; South Saxony Investment Group;
Southern Electronics Investments; Southwest Financial;
Srapex Associates; Stoneham National; Summit Holdings;
Sun Brook Partners; Suncoast Financial; Sunpow Investment
Associates; Tangent Associates; Tangent Capital, a
California Limited Partnership; Tartan Financial
Associates; Teton Investors, L.P.; Transcentury
Investments; Translimited; Translimited II; Triplestone,
Inc.; Valcour Associates, Valcour Associates II; Wallstone
Associates; WB Associates; Wellesly Investments, a
California Limited Partnership; Westam Capital Group;
Westminster Capital; Westridge Investment Associates, a
California Limited Partnership; Whitehall Financial
Associates; Whitmore Capital L.P.; Whitson Investors L.P.;
Whitworth Associates, Whitworth Capital Partners; Wicklow
Investment Associates; Wilcam Financial Group, Inc.; Wil
Shire First Associates; Winooski Associates; Winooski
Partners II; Winooski Partners III; Winooski Partners IV;
Winooski Partners V; Winston Capital Partners; Woodglen,
Inc.; Woodtime Associates; WP Capital Partners; WRC
Associates, Wriston Associates, a California Limited
Partnership; WTV Associates; Yorkshire Group Investments,
a California Limited Partnership, Defendants-Appellees.
 No. 1371, Docket 95-9072.
 United States Court of Appeals,
Second Circuit.
 Argued May 3, 1996.
Decided Aug. 26, 1996.
 
 Thomas P. Puccio, New York City (William M. McErlean, Richard S. Huszagh, John F. Verhey, Julie A. Garvey, Rudnick & Wolfe, Chicago, Illinois, of counsel), for Movant-Appellant TLC Beatrice International Holdings, Inc.
 Merrill G. Davidoff, Berger & Montague, Philadelphia, Pennsylvania (David Berger, Lawrence J. Lederer, Michael L. Block, of counsel; Stanley Nemser, Wolf Popper Ross Wolf & Jones, New York City, of counsel), for Plaintiff-Appellee Presidential Life Insurance Company and the Plaintiff Class.
 JAMES L. STENGEL, Donovan Leisure Newton & Irvine, New York City (Steven J. Fink, Geoffrey W. Millsom, of counsel), for Defendant-Appellee Carlton Investments.
 Before FEINBERG, OAKES, and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 This appeal arises out of a so-called "settlement class action." TLC Beatrice International Holdings, Inc. ("TLC Beatrice") appeals from Judge Pollack's denials of its motions seeking intervention as of right under Rule 24(a), Fed.R.Civ.P., and for relief under Rule 60(b) from the district court's July 1992 final judgment approving the settlement. The district court denied the motions as moot. Although the parties agree that the district court was in error with regard to mootness, they urge us to resolve this appeal on the merits. We believe, however, that we would benefit from the views of the district court and remand.
 
 
 2
 We briefly sketch the background of this appeal. It arises from the bankruptcy of Drexel Burnham Lambert Inc. ("Drexel") and from various activities of Michael Milken and others affiliated with Drexel that have generated a considerable volume of litigation arising under federal securities law. See In re Michael Milken and Associates Securities Litigation, 150 F.R.D. 57 (S.D.N.Y.1993). In February 1992, negotiations resulted in an agreed framework for the settlement of all such claims ("Milken Global Settlement") from a $1.3 billion settlement fund. As a condition of the Milken Global Settlement, Milken and the other defendants insisted on their release from all liability to anyone arising from their Drexel-related activities. The parties, with the participation of the district court, appear to have agreed that this condition could be met by bringing and settling a class action on behalf of all persons or firms who might have Drexel-related claims against the defendants and who were not then involved in the Drexel bankruptcy proceedings or in civil litigation against the defendants. The instant matter is that class action, appropriately described as "the Global Class Action."
 
 
 3
 The complaint was filed on February 18, 1992. A settlement agreement was reached three weeks later. After approving the settlement, the district court entered an injunction that provided:
 
 
 4
 All members of the Global Class ... are hereby permanently enjoined from commencing or prosecuting in any court (federal or state) or any other forum against any of the Identified Settling Parties any claim that has been or could have been asserted in the Global Class Action. Further, all members of the Global Class Action ... are hereby permanently enjoined from commencing or prosecuting in any court (federal or state) or any other forum other than this Court, any claim, action or proceeding that challenges or seeks review of or relief from any act, decision, order, judgment or any other ruling of this Court in connection with the Global Class Action.... Any violation of the foregoing injunctions may be punishable as contempt of court, in addition to all other available remedies.
 
 
 5
 Of the $1.3 billion in the Milken Global Settlement fund, $50 million was allocated for the settlement of the Global Class Action.
 
 
 6
 One of the Identified Settling Parties was Carlton Investments ("Carlton"), a partnership formed by Milken and his associates in Drexel's High Yield Bond Department to hold equity interests and other securities taken by them from Drexel clients, including a claimed interest in over 25 percent of the stock of TLC Beatrice. In May 1994, Carlton filed suit in New York state court against TLC Beatrice alleging breach of a shareholder agreement that grew out of Drexel's financing of the late Reginald Lewis's acquisition of Beatrice. TLC Beatrice asserted various affirmative defenses. These were based on conduct of some of the defendants that might have been the basis for, in the injunction's words, "[a] claim that ... could have been asserted in the Global Class Action." In March 1995, Carlton moved to dismiss the affirmative defenses on the ground that TLC Beatrice's assertion of them violated the injunction. TLC Beatrice responded, inter alia, that it was not bound by the judgment and injunction because it had not received notice of either the Global Class Action or the settlement and because the judgment was constitutionally deficient.
 
 
 7
 In July 1995, Carlton filed a contempt motion against TLC Beatrice in the present action. It claimed that the affirmative defenses were barred by the judgment and that TLC Beatrice's challenge to the validity of the Global Class Action settlement in the state court action violated the injunction. TLC Beatrice argued in response that the affirmative defenses were not "claims" covered by the final judgment in the Global Class Action. In addition, TLC Beatrice filed two motions that are the subject of the instant appeal. The first motion sought leave to intervene under Rule 24 and to assert counterclaims for money damages--in addition to the assertion of affirmative defenses--against Carlton in the state court action. The counterclaims were based on essentially the same conduct underlying the affirmative defenses. The second motion sought, under Rule 60(b), to void the judgment in the Global Class Action as against TLC Beatrice. It claimed that the district court lacked personal and subject matter jurisdiction and that the settlement violated TLC Beatrice's due process rights.
 
 
 8
 At the district court's request, TLC Beatrice filed an explication of its state court affirmative defenses, stating that "the only relief sought by the Affirmative Defenses is the denial of Carlton's requested monetary recovery against TLC Beatrice for its alleged breach of the Stockholders' Agreement. TLC Beatrice is not seeking any money damages, set off or declaratory relief by the Affirmative Defenses." The district court agreed with TLC Beatrice that the assertion of affirmative defenses did not violate the injunction and denied Carlton's contempt motion. Shortly thereafter, it also denied the Rule 24 and Rule 60(b) motions. The district court apparently read the language from TLC Beatrice's description of its affirmative defenses quoted above as relating to its Rule 24 and 60(b) motions as well as to the response to Carlton's contempt motion. The court then concluded that the denial of the contempt motion rendered TLC Beatrice's Rule 24 and 60(b) motions moot and denied them without further explanation.
 
 
 9
 We believe, and the parties agree, that the motions in question were not moot. TLC Beatrice had interposed affirmative defenses in the state court action in the belief that the purely defensive use of the underlying claims did not violate the injunction. Recognizing that counterclaims for monetary damages based on the same activities would violate the injunction, TLC Beatrice moved in the district court for leave to intervene and assert such counterclaims and to void the Global Class Action judgment. In denying the motion to hold TLC Beatrice in contempt, the district court agreed that the assertion of affirmative defenses in the state court action did not violate the injunction. However, that decision in no way addressed--much less mooted--TLC Beatrice's Rule 24 and 60(b) motions.
 
 
 10
 We have not had, therefore, the benefit of the district court's views on the merits of the motions that are the subject of this appeal. Although the parties agree that the issues underlying the motions in question are not moot, they urge us not to burden the district court by remanding. They argue that the merits have been fully briefed on this appeal and that a remand will not appreciably add to the materials before us. However, the parties dispute the timeliness of TLC Beatrice's motion to intervene and the adequacy of notice to it of the class action. These issues have a factual component that should be resolved in the first instance by the district court. We are also hesitant to address the important issue of the validity of this form of so-called settlement class action without knowing the views of the district court, which was deeply involved in both the Milken Global Settlement and the bringing and settlement of the Global Class Action. We therefore reject the urgings of the parties and remand to the district court for a decision on appellant's Rule 24 and 60(b) motions.
 
 
 11
 Any appeal after remand shall be on an expedited basis. To the extent practicable, the parties may rely on the briefs and appendices filed in this appeal supplemented by letter briefs. Also to the extent practicable, any subsequent appeal should be referred to this panel. Any party filing a post-remand notice of appeal shall communicate immediately with staff counsel of this court regarding these instructions.
 
 
 12
 We therefore remand. The mandate shall issue forthwith.