Karl THOMPSON, et al., Plaintiffs,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

No. 00 Civ. 5071(HB).

United States District Court, S.D. New York.

April 29, 2003.

Regina L. Lapolla, Melvyn I. Weiss, Brad
N. Friedman, Barry A. Weprin, Milberg,
Weiss, Bershad, Hynes & Lerach, LLP, New

York City, John J. Stoia, Jr., Theodore J. Pindar, Jobeth Halper, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, San Diego, CA, Andrew S. Friedman, Bonnett, Fairbourn, Friedman & Balint, P.C., Phoenix, AZ, W. Christian Hoyer, Christa L. Collins, James, Hoyer, Newcomer & Smiljanich, P.A., Tampa, FL, Rebekah Keith, Watson, Jimmerson, Givhan & Martin, P.C., Huntsville, AL, Joe Whatley, Charlene P. Cullen, Whatley Drake, L.L.C., Birmingham, AL, for Karl Thompson.

Melvyn I. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York City, for Jacqueline Golden, Lucille Ellis.

Christa L. Collins, James, Hoyer, Newcomer & Smiljanich, P.A., Tampa, FL, for Marguerite Guillmette Justin, Adrienne Delpit Blazio, and Charlene H. McCallup.

Colby A. Smith, Bruce E. Yannett, Scott N. Auby, Debevoise & Plimpton, New York City, for Metropolitan Life Insurance.

Barry Wesley, Barrett, Towmey, Broom, Hughes & Wesley, Carbondale, IL, Jonathan H. Waller, Campbell, Waller & Loper, LLC, Birmingham, AL, Bob Foote, Foote, Meyers, Miekle, Flowers & Solano, LLC, Geneva, IL, for Myron Billups.

Charles M. Thompson, Birmingham, AL, for Violett Martin.

## *OPINION*

BAER, District Judge.

Plaintiffs and defendant move, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP"), to have the proposed class action settlement approved. In addition, various non-parties or unnamed class members have moved to intervene to object to the proposed settlement. Plaintiffs and defendant oppose the intervention. For the following reasons, plaintiffs' and defendant's motion to approve the settlement is GRANTED and the motions to intervene are DENIED.

## I. BACKGROUND

Plaintiffs filed the instant lawsuit on July 11, 2000. In the amended consolidated class action complaint, plaintiffs asserted causes of action against defendant Metropolitan Life Insurance Company ("Metropolitan") under 42 U.S.C. § 1981 for racial discrimination in the formation, performance, modification and termination of insurance contracts and 42 U.S.C. § 1982 for racial discrimination in rights to property. Plaintiffs' complaint revolves around their allegations that Metropolitan sold non-Caucasians insurance policies that cost more and provided less benefits than policies sold to Caucasians. Plaintiffs sought and obtained discovery of matters extending back to the beginning of the 20th century, amounting to some 450,000 pages of documents. In total, both sides have deposed 31 witnesses. In April 2001, defendant moved for summary judgment, which the Court denied. *Thompson v. Metropolitan Life Ins. Co.* 149 F.Supp.2d 38, 53 (S.D.N.Y. 2001). In October 2001, the parties began settlement discussion while the litigation continued. The settlement discussions eventually culminated in a stipulated proposed settlement agreement. **This Court entered an Order on August 29, 2002 to preliminarily certify the putative class in this action for settlement purposes under FRCP 23(b)(3), have defendant provide notice, by individual notice, publication and other media, to potential class members, schedule a fairness hearing for February 7, 2003, and provide class members with an opportunity either to exclude themselves from the settlement class or to object to the proposed settlement.** The fairness hearing was held on February 7, 2003, during which the parties presented arguments to the Court urging approval of the proposed settlement, and those moving to intervene or to object to the proposed settlement made their arguments to the Court.

*Terms of Proposed Settlement Agreement*

The settlement attempts to fully compensate class members for alleged past discriminatory overcharges and restrictions on the sale of certain types of policies. More specifically, the settlement compensates non-Caucasians who held "Industrial" policies issued by defendant from 1901 and 1964. In addition, the proposed settlement compensates non-Caucasians holding (a) certain "Ordinary" policies, issued from 1901 to 1972 with

a substandard risk classification or (b) "Metropolitan Series" policies issued from 1960 to 1972 with initial coverage amounts of $4,500 through $5,000. Members of the class include (1) the insureds, and any assignees of the Industrial policies, (2) the past and present owners of Ordinary policies, and (3) the past beneficiaries of death benefits under any of the class policies. Settlement § I.D.1 *et seq.*

To rectify past discrimination by defendant, all in-force policies under the proposed settlement will receive increased death, maturity, and termination benefits, according to the formula set forth in the proposed settlement, that become payable in the future. Alternatively, holders of in-force policies may elect to receive cash payment equal to the present-value actuarial cost of the increased benefits. *Id.* § III. Where the policy has already paid death or maturity benefits, a cash payment will be made in an amount equal to the increased benefits available to a comparable in-force policy. *Id.* § IV. Policies that have terminated already will receive comparable relief in the form of cash and/or five years of free death benefit coverage. *Id.* § V. If the benefit calculated pursuant to the proposed settlement should be less than $10, the benefit paid will increase to $10. *Id.* § X.D. In total, the proposed settlement requires Metropolitan to provide these benefits at a cost of at least $52 million. In no event will the benefits paid be less than $52 million or more than $90 million. If the benefits owed fall outside these boundaries, the cost will be accordingly adjusted to fall within the prescribed limits. *Id.* §§ X.A & Ex. M. Based on claims submitted thus far, the settlement benefits will need to be increased to reach the $52 million minimum, thus each class member will receive more compensation than originally provided for "full compensation." Joint Decl. at ¶ 71. The proposed settlement further requires Metropolitan to contribute as much as $5 million to the United Negro College Fund, though the amount may be less if the present total value of the settlement exceeds $90 million.

In-force policies that are known to Metropolitan, which are subject to the proposed settlement, will have the benefits increased automatically. For all other in-force policies that may be subject to the settlement, Metropolitan will review the death certificate and/or application file before the policy benefits are paid to determine if an increase to the benefits is applicable under the settlement terms. For policies that have paid death benefits since August 1995, or that have paid maturity or surrender benefits since January 1989, settlement benefits will also be provided automatically. Settlement § IX.C. Where action is required to claim benefits, particularly for the older insurance policies, class members and claimants, such as relatives of deceased class members, have until April 23, 2003 to submit a claim for benefits. *Id.* §§ IX.B, IX.E, I.D.1.q. In addition, Metropolitan is obligated to conduct searches for policies for which death or maturity benefits may be payable since August 1995 or in the future, and to use its best effort to pay benefits where they are due under the settlement. *Id.* § VII & Exh. C.

## II. DISCUSSION

### A. Class Certification

To certify a class, FRCP 23 requires: (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) fair representation of the plaintiff class by the representative class members. Fed.R.Civ.P. 23(a). In addition, the party seeking certification must show that common questions of law or fact predominate and that a class action is a superior means to adjudicate the claims. Fed.R.Civ.P. 23(b)(3).

■■■■ The parties have demonstrated that all of the aforementioned requirements have been met. First, no one disputes that the class members number in the hundreds of thousands, and thus the numerosity requirement cannot be disputed. Furthermore, such numbers preclude practical joinder of all the class members. *See* Fed.R.Civ.P. 23(a)(1). Second, the complaint alleges that defendant engaged in a course of conduct by systematically discriminating against non-Caucasians in the sale of its insurance policies. Common questions of fact and legal issues revolve around defendant's nationwide race-based discrimination, purportedly dictated at the home office level. *See* Defen-

dant Memorandum in Support of Proposed Settlement ("Def.Mem.") at 37. Third, the named plaintiffs are all African–Americans who purchased Metropolitan's life policies and were victims of defendant's discriminatory practices. Each named class member's claims arise from the same course of defendant's conduct and each member relies on the same legal argument to demonstrate defendant's liability, and thus the typicality requirement has been satisfied. *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993). Fourth, I find plaintiffs' counsel has more than competently handled this case and no credible evidence has been presented, which might suggest a conflict between the named class representatives and the other class members that might impair the adequacy of representation. The adequacy requirement is met. Fifth, plaintiffs' claims center on defendant's discriminatory sales practices of its insurance policies, and thus there are substantial common questions of law and fact as to defendant's liability that predominate with respect to each of the non-Caucasian plaintiff class members. Lastly, in view of the numerosity of class members and the substantial passage of time that has elapsed since the discriminatory transactions, a class action is clearly the superior method to resolve this controversy. *In re Twinlab Corp. Securities Litig.*, 187 F.Supp.2d 80, 83 (E.D.N.Y.2002); *Pigford v. Glickman*, 185 F.R.D. 82, 94 (D.D.C.1999). The Court certifies this lawsuit as a class action.

### B. Application of the *Grinnell* Factors

▮ FRCP Rule 23(e) requires that any settlement or dismissal of a class action be approved by the court. In determining whether to approve a class action settlement, the district court must determine whether it is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir.2000); *Malchman v. Davis*, 706 F.2d 426, 434, 436 (2d Cir.1983) ("to survive appellate review, the district court must show it has explored comprehensively all relevant factors" and made "its own independent valuation of fairness and reasonableness."). In so doing, the court must "eschew any rubber stamp approval" yet simultaneously "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.1974). Judicial discretion should be exercised in light of the general policy favoring settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982).

▮ The Second Circuit identified nine factors ("*Grinnell* factors") that courts should consider in assessing the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation;

> (2) the reaction of the class to the settlement;

> (3) the stage of the proceedings and the amount of discovery completed;

> (4) the risks of establishing liability;

> (5) the risks of establishing damages;

> (6) the risks of maintaining the class action through the trial;

> (7) the ability of the defendant to withstand a greater judgment;

> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell Corp.*, 495 F.2d at 463. All nine factors need not be satisfied, rather, the court should consider the totality of these factors in light of the particular circumstances. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir.2001). The court should also analyze the negotiation process in light of "the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *Malchman*, 706 F.2d at 433 (internal citations omitted). A strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length. *See Chatelain v. Prudential–Bache Sec.*, 805 F.Supp. 209, 212 (S.D.N.Y.1992). Based on the following review of the applicable *Grinnell* factors, I find that the proposed settlement is fair, adequate and reasonable, and it is approved.

### 1. Continued complex and expensive litigation

 Little needs to be said about the complexity and likely expense that both sides would incur were the case to be fully litigated. The case involves insurance policies that extend back nearly 100 years and that encompasses hundreds of thousands, if not more, class members. Litigating this trial would require extensive and expensive proof of the actuarial and underwriting procedures for a vast time period, which would entail substantial expert testimony concerning complex actuarial methodologies. Joint Decl. ¶ 53. I have no doubt that allowing this case to continue to trial would lead to a prolonged, expensive, and complex litigation, which would be highly unfavorable to many of the elderly class members, who may not survive the elapsed time it may take before all appeals are exhausted. This factor strongly militates in favor of settlement. *See, e.g., In re Metropolitan Life Derivative Litig.,* 935 F.Supp. 286, 294 (S.D.N.Y.1996) (finding that "settlement would undoubtedly be in the best interest of all the parties" in light of the "effort and expense that would be required to take [the] case to and through trial"); *TBK Partners, Ltd., v. Western Union Corp.,* 517 F.Supp. 380, 389 (S.D.N.Y.1981) (approving settlement where "further prosecution of [the] action ... would entail for class members severe problems of proof dependent upon ancient documents and historical accounts covering at least 99 years of history, thereby raising serious questions as to authenticity, completeness and admissibility").

### 2. Reaction of Class Members

With respect to the second factor, I find there have been remarkably few objections to the proposed settlement. To date, over forty one thousand claim forms have been submitted by persons actively seeking to participate in the settlement, whereas a scant 19 individuals have come forward to object to the settlement, amounting to less than 0.05% of those class members clearly cognizant of the proposed settlement. Indeed, relative to the total number of policies confirmed as eligible for benefits under the settlement, less than 0.1% of the class members have opted out of the settlement. In view of the extensive notice campaign waged by defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement. *See D'Amato,* 236 F.3d at 86–87 (affirming district court's approval of class action settlement when there were a small number of objections and exclusions requested). Furthermore, twenty six state departments of insurance, including New York's, which are charged with protecting the interests of insurance policy holders, have entered into regulatory settlement agreements with Metropolitan that are materially identical to the proposed settlement. This support by both class members and the regulatory departments weighs heavily in favor of approving the proposed settlement.

### 3. Stage of Proceedings and Amount of Discovery Completed

With respect to the third factor, defendant notes that the proposed settlement was reached after over a year of hard fought litigation, in which some 450,000 pages of documents were produced, 31 depositions, including 22 current or former representatives of Metropolitan, were taken, and motions for summary judgment and class certification had been considered. These facts suggest that litigation has reached a fairly advanced stage, and that there has been sufficient discovery by plaintiffs to assure the ability to "weigh[ ] their position based on a full consideration of possibilities facing them," *Klein v. PDG Remediation,* 1999 WL 38179, at *2–3 (S.D.N.Y. Jan.28, 1999) (quoting *In re Salomon Inc. Sec. Litig.,* 1994 WL 265917, at *13 (S.D.N.Y. June 16, 1994)); *see also In re American Bank Note Holographics,* 127 F.Supp.2d 418, 425 (S.D.N.Y.2001), provide plaintiffs' counsel with an informed basis to negotiate a reasonable compromise and assess the fairness of the proposed settlement. *See Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 363–64 (S.D.N.Y.2002). This factor too weighs in favor of approving the settlement.

### 4. Establishing Liability

With respect to the likelihood of establishing defendant's liability, there is fair basis for

finding that plaintiffs may not prevail. To prove their case, plaintiffs would have had to, among other things, show by a preponderance of evidence that Metropolitan (i) intentionally charged non-Caucasians more than similarly situated Caucasians for insurance throughout the 70 year class period; (ii) targeted low income and impoverished minority neighborhoods for the purpose of selling substandard policies; (iii) marketed its policies in such a way as to conceal from non-Caucasians that they were paying more for coverage; (iv) designed and used flawed mortality tables to further conceal its discriminatory practices; (v) uniformly withheld benefits to which class members were entitled; and (vi) failed to inform class members when their policies matured. Plaintiffs Memorandum in Support of Proposed Settlement ("Pl.Mem.") at 27. Further, to prevail, plaintiffs would have to successfully overcome defendant's affirmative defenses. For instance, plaintiffs would have to successfully argue that 42 U.S.C. §§ 1981 and 1982 should apply retroactively for private conduct in the first half of the 20th century, well before the Supreme Court reversed long standing precedent and pronounced that these statutes applied to private conduct. *See Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Fairness would seem to dictate that the defendant should be given the opportunity to know what the law is before it can be penalized for an infraction, and thus due process may have precluded a finding of liability against the defendant for violating §§ 1981 and 1982. *See, e.g., Landgraf v. USI Film Prods.*, 511 U.S. 244, 265–66, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Furthermore, plaintiffs would have had to refute Metropolitan's other affirmative defenses, including the statutes of limitations and res judicata bar on many of plaintiff's claims. The fact that (1) many plaintiffs have died and (2) many of the old documents that the remaining plaintiffs would have had to rely on are no longer familiar to the prospective witnesses and may be subject to various interpretation creates further risk plaintiffs would not prevail on liability for discrimination. *See Rutstein v. Avis Rent–A–Car Sys. Inc.*,

211 F.3d 1228, 1239 (11th Cir.2000). Additionally, as noted above, this litigation would entail testimony by experts in regard to complex subject matter, which always adds an element of uncertainty as to the outcome. *See In re Sterling Foster & Co., Inc., Securities Litig.*, 238 F.Supp.2d 480, 484–85 (E.D.N.Y.2002). The factual difficulties and legal obstacles that would be raised by defendant if they proceeded to trial poses clear risks to plaintiffs' ability to demonstrate liability and further tip the scale towards approval of the proposed settlement.

### 5. Establishing Damages

For many of the same reasons expressed above in connection with establishing liability, plaintiffs would certainly face the prospect that no damages may be awarded. To prove the damages suffered by class members as a result of defendant's discrimination, the members would have to demonstrate that the policy actually purchased differed from the policy that the member would have purchased had there been no discrimination, which in many cases may be an impossible task given that many of the policy holders have since died. *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 177–78 (S.D.N.Y.2000). In such cases, plaintiffs would be burdened with trying to prove damages based largely on complicated statistical data. Indeed, "significant recoveries in race discrimination cases ... [is] relatively isolated." *Roberts v. Texaco, Inc.* 979 F.Supp. 185, 198 (S.D.N.Y.1997). This factor, as well, weighs in favor of approving the proposed settlement.

### 6. Risks of Maintaining Class Action

Although this Court preliminarily granted class certification to the plaintiffs, both parties contend that class decertification remains a looming threat on the ground that maintaining this lawsuit as a class action would be unmanageable. Neither side presents any evidence to show that there was a substantial risk of the class being decertified either before or during trial. On balance, this factor neither weighs in favor of or against the settlement. *In re Austrian and*

*German Bank Holocaust Litig.*, 80 F.Supp.2d at 178.

#### 7. Ability to Withstand Greater Judgment

Metropolitan does not dispute that it could withstand a judgment exceeding the amount contemplated in the proposed settlement. Metropolitan notes, however, that this fact alone does not support the inference that the settlement is unfair. *See In re Painewebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y.1997). Nonetheless, this factor weighs against the settlement.

#### 8. Range of Reasonableness of Settlement

Counsel for both the plaintiffs and defendant agree that the settlement fund is reasonable and the best possible recovery in light of the attendant risks with litigation. *See* Pl. Mem. at 31, Def. Mem. at 47. Plaintiffs assert that the settlement will fully compensate identified class members for their economic injury resulting from defendant's past discriminatory practices. To reach as many claimant class members under the settlement as possible, defendant has agreed to compensate all known eligible class members automatically, and has engaged in a comprehensive media campaign, including direct mail notice and notification in various media, including periodicals, television and radio, to notify class members of the settlement. Further, defendant has agreed to continue searching its records, even after the time period to submit claim forms closes, to identify class members who may not have come forward. In addition, defendant gave class members a period of several months, up to December 30, 2002 to opt-out or express their objections to the settlement. Although the settlement will require class members to forego recovery of damages from emotional distress or punitive damages, the likelihood

of any recovery, as discussed above, remains speculative. I am persuaded that the class settlement calls for reasonable steps to ensure that the maximum number of eligible class members can benefit from the settlement, and I agree that the settlement, in light of the relief offered, is preferable to the speculative recovery that may be secured after lengthy and expensive litigation.

#### 9. Other factors

This litigation was hard fought by both sides with counsel that have shown themselves to be capable and experienced in class action litigation. The parties have represented to the Court that the class action settlement was reached through arm's length negotiations over the course of several months and that it was negotiated in an adversarial manner after substantial factual investigation and extensive legal analysis and expert investigation. I find no evidence to disbelieve their representation, and thus conclude these other factors further militate for approving the proposed settlement.

### C. Objections

At this juncture, nineteen objectors have come forward. Of them, only eleven have been confirmed to be class members or representatives of class members. Although the status of some objectors has not been confirmed and some allegedly do not belong to the class because their policies fall outside the scope of the class action, it may turn out, upon further investigation, that the objectors are indeed class members. In view of the on-going investigation by defendant into their status, it seems premature for me to reject the objectors' arguments based solely on their alleged status as non-class members.[1] With the exception of Alfred Sweeney, who is plainly not a class member or representative of a class member,[2] I will

---

1. The parties also allege that the objections by Arleen Billingsley Johnson are untimely because she filed her objections after the December 30, 2002 cut-off date. Johnson contends that she did not receive an individual mailed notice that the other class members received, which she contends excuses her lateness. For the sake of completeness, I will consider her objections, although I find little merit, as discussed further

herein, in her claim that the extensive notice campaign undertaken by defendant fails to comply with FRCP 23(c)(2).

2. Sweeney, proceeding *pro se*, is Caucasian and does not assert that his rights under any Metropolitan policy derives from insurance coverage of a non-Caucasian. Accordingly, Sweeney is not a class member. In addition, Sweeney does not

consider the claims by all of the objectors for thoroughness sake and in concert with my approval of the proposed settlement.

### 1. Adequacy and appropriateness of settlement benefits

A number of the objections revolve around the adequacy and form of the benefits provided. For instance, several of the objectors have indicated that they prefer cash in lieu of five years of free death benefit coverage for terminated policies. Other objectors assert that the settlement is inadequate because it fails to take into account "determining factors" that should be used to decide how much may be recovered by each claimant. Contrary to the objectors' expectations, the settlement "is not a wish-list of class members that the Defendant[ ] must fulfill."*Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 169 (S.D.Ohio 1992). These and other objectors fail to understand that the form and amounts of benefit provided were arrived at as a result of hard-fought negotiations between experienced class action attorneys. Plaintiffs' counsel, having weighed the risks of proving liability and damages at trial, negotiated increased insurance benefits in an amount and form that, in their judgment, would compensate plaintiffs for the discrimination. With respect to death benefits, plaintiffs' counsel negotiated death benefit coverage without requiring class members to repay the years or decades worth of back premiums normally needed to reinstate a lapsed policy. Some of the more elderly, in light of their advanced age, object to the death benefit, preferring to receive cash now. Although they may prefer to have cash now, the objectors cannot deny that the death benefit would provide a tangible benefit that will assist them and their loved ones to meet their final needs. The average age of class members who would be covered by the extended settlement death benefits is about 75, January 27, 2003 Long Decl. at ¶ 16(d), and thus a substantial number of those people would likely receive death benefits, contrary to the claims or beliefs of some objectors. The settlement for free death benefits gives reasonable and fair relief in view of the terminated status of the eligible policies and the legal and factual obstacles to proving the policy holders' claims.

The proposed settlement provides a comprehensive set of guidelines to compensate class members for the discrimination, depending on, among other things, the type of policy and when it issued. Although some of the objectors may prefer relying on other or additional factors to determine the amount that each class member may recover, it is well established that "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' Class Counsel." *In re Nasdaq Market–Makers Antitrust Litig.*, 2000 WL 37992, at *2 (S.D.N.Y. Jan.18, 2000). In the same vein, other objectors claim that additional money should be set aside for a *cy pres* fund to account for the class members who are unaware of the settlement or have passed away and have not been able to claim the benefits owed to them for the discrimination. Recognizing this very problem with identifying unknown class members, the parties have agreed that Metropolitan will contribute up to $5 million to the United Negro College Fund ("UNCF"), which will not be considered as part of its normal annual charitable giving, and which will be named "The Fund For a Brighter Future." Although creating a *cy pres* fund to benefit other similarly situated non-Caucasians may be preferable to some objectors, none of the objectors provide any reason to conclude that this approach, *i.e.*, the contribution to the UNCF, would be unreasonable or unfair. Further, I would add that the opinion of counsel, informed by actuarial experts and the relative strength and weaknesses of the class members' claims, is entitled to great weight. *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F.Supp.2d 418, 430 (S.D.N.Y. 2001). Here, the objectors present nothing to overcome the deference that should be given to the rational allocation of benefits that has been negotiated by counsel for the parties.

present any objections to the purported unfairness of the proposed settlement to members in this class action. Accordingly, his objections

have no bearing on the pending motion and proposed settlement.

Several of the objectors contend that more money is warranted, particularly in view of Metropolitan's race discrimination. The objectors wrongly assume Metropolitan's guilt would be proven at trial. Such assumption cannot stand as a proper basis to evaluate the proposed settlement's fairness. *Grinnell*, 495 F.2d at 458–59. Moreover, the objectors ignore that the settlement provides, at minimum, $52 million to the class, notwithstanding the difficult legal and factual obstacles that lay head of plaintiffs if they were to proceed to trial. It is important to note that this amount does not include the money spent for the notice campaign, administrative costs, investigative costs to research and hopefully discover unknown class-members, and attorneys' fees, which would easily push Metropolitan's total expenditures to over $100 million and which can hardly be considered an insubstantial amount. The value of the relief provided to the class is considerable, and in light of the obstacles to the class members' recovery, fair and reasonable. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 557 (D.N.J.1997).

One objector contends that the proposed settlement compares unfavorably with an earlier insurance class action settlement against American General Life & Accident Insurance Company, which was handled by one of the class counsel. Although the objector asserts that the allegations in the instant case are identical to the American General case, the facts are not. For instance, Metropolitan, unlike American General, had undertaken equalization programs in 1948 and 1963 to mitigate the discrimination. In further contrast, American General, until the case settled, continued to collect premiums from African–Americans using rates that were explicitly based on race. Here, Metropolitan had not collected premiums using discriminatory rates since 1982. Comparing the two cases and the results obtained therefrom would be like comparing apples and oranges. The differences in the facts between American General and the instant case are sufficient to militate against using the former case as a yardstick to measure whether the proposed settlement before me is reasonable. *Foe v. Cuomo*, 892 F.2d 196, 198 (2d Cir. 1989).

## 2. Complexity of the claims process

At least three objectors contend that the claims procedure is too complex. I disagree. The claim form is two sides of one page. *See* Def. Opp. to Objectors, Exh. D. If the claimant knows the applicable policy number, he needs to fill out only one side of the form, which asks for readily available pedigree information such as the insured's name, address, date of birth, date of death if applicable, and relation of claimant to the insured. If the claimant does not know the policy number, the claimant needs to also complete the back of the one page claim form, which asks for answers to seven questions, and is designed to assist Metropolitan in searching for the policy. A brief set of instructions accompanies the form and tells the claimant, among other things, to complete as much of the form as possible, and call the toll-free information phone line if questions arise. Accordingly, a claimant need only complete the form to the best of his or her ability, sign it, and return it in a pre-addressed and postage-paid return envelope that comes with the claim form. Alternatively, claimants may log on to an interactive website at www.lifesettle.com, to complete and file a claim form online, or to download the form and complete offline to mail. Metropolitan, pursuant to the proposed settlement, must perform the research necessary to verify whether the claimant is eligible for settlement benefits.

The only suggestions the objectors have to further simplify the procedure would be to dispense with the claim form entirely, and require Metropolitan to identify all eligible class members who can be ascertained and located from existing records or alternatively, to allow claimants to file their claims by phone. Although automatic identification of all class members would be ideal, that simply is not possible here because Metropolitan has no practical means to independently identify from its records every individual entitled to settlement benefits and determine where such individual may now reside. The settlement, however, does provide automatic relief to over 300,000 class members, *see* Def. Mem. at 21, who hold in-force policies that are known to be subject to class settlement,

as well as to all those who hold known class policies that paid a death benefit on or after August 19, 1995 or a maturity or cash surrender benefit on or after January 1, 1989. Settlement §§ IX.A & IX.C. Further, under the settlement, Metropolitan is obligated to affirmatively research all in-force policies to ensure that the class members receive settlement benefits when the death, maturity, or surrender value is paid, regardless of whether a claim form is submitted. *Id.* §§ III.A.5–6 & III.B.6. As for the suggestion to allow applications to be filed by phone, the objectors ignore the fact that the claim form requires a signed declaration affirming that the insured is a non-Caucasian. Moreover, in light of the readily available toll-free information phone service to those who had questions about the claim form, I fail to see how completing the form by phone is in any way simpler than completing the written form with the assistance of a toll-free help-line. The objectors present nothing to suggest that the claim procedure poses an unnecessary or undue impediment to absent class members' rights to claim settlement benefits. Accordingly, I find no reason to conclude that the claim procedure is unfair because of the certain steps absent class members must take to obtain settlement benefits. *See, e.g., In re Austrian & German Bank Holocaust Litig.,* 80 F.Supp.2d 164, 176 (S.D.N.Y.2000), *aff'd sub nom. D'Amato v. Deutsche Bank,* 236 F.3d 78 (2d Cir.2001); *In re Nasdaq,* 2000 WL 37992, at *1 (approving distribution plan that requires submission of claim form).

### 3. Adequacy of notice and its content

■■■ Some of the objectors express dissatisfaction with the amount of information provided by the class notice. "Although no rigid standards govern the contents of notice to class members, the notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir.1982) (addition in original) (citations omitted)(quoting *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 122 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975)). Objectors Albert Martin and James Colley, for instance, contend that the notice is inadequate because it does not state a proposed amount and method for determining attorneys fees. The appearance and argument by counsel on behalf of these objectors at the fairness hearing belies their claim that the notice denied them the opportunity object to the fees. Furthermore, negotiations over the amount of attorneys' fees did not begin until after the proposed settlement was finalized. Thus, it would have not been possible to state a specific amount in the notice. Moreover, unlike common fund cases, where attorneys' fees can erase a considerable portion of the funds allocated for settlement, the fees were negotiated separately and after the settlement amount had been decided, thus considerably removing the danger that attorneys' fees would unfairly swallow the proceeds that should go to class members.

■■ Objector Colley further contends that the notice is inadequate because it does not disclose the approximate amount of damages attributable to defendant's wrongdoing. Neither Rule 23 nor due process, however, requires that the notice report the estimated value of damages. FRCP 23; *Mangone v. First USA Bank,* 206 F.R.D. 222, 233 (S.D.Ill.2001). Moreover, the amount of damages is an issue of fact and is not easily calculable at this juncture with any reasonable certainty. *In re Sumitomo Copper Litigation,* 189 F.R.D. 274, 283 (S.D.N.Y.1999). Even if a roughly accurate estimate of damages could be provided, "[d]etermining whether [the] settlement is reasonable 'is not susceptible of a mathematical equation yielding a particularized sum.'" *Austrian & German Bank,* 80 F.Supp.2d at 178 (quoting *In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 66 (S.D.N.Y.1993)). The lack of an approximate estimate of damages does not undermine the fairness of this settlement. Objector Colley also argues that the notice is inadequate because it fails to give an approximate value of the class member's individual benefits. Colley's argument is without merit and ignores the actual contents of the notice packages sent to known class members. The notice package sent to known class members included an individualized

statement of relief on a page clearly entitled: "Your Benefits Under the Settlement." If class members did not receive such notice and wished to find out the benefits to which he or she is entitled, a simple telephone call to the toll-free phone number would have answered the question.

Ironically, some of the objectors contend that the notice is defective because it contains too much information and is overly complicated. *See, e.g.*, Fairness Hearing Tr. at 71–72. As evidence, the objectors note that the total claims amounted to only about $42 million, about $10 million less than originally anticipated. To rectify this problem, the objectors suggest expending another $15 million to send out simpler notices of the settlement. The objectors offer no evidence, besides their own speculation, as to the reason for the underestimation or the likelihood of success for such additional notice. I have reviewed the notice package and find nothing to support their position.

 The notice provides, in language easily understandable to a layperson, the essential terms of the settlement, including the claims asserted, Pl. Mem., Exh. D (part 1); who would be covered by the settlement, *id.* (Part 2); how to participate in or opt-out of the settlement, *id.* (parts 3 & 5); the settlement benefits, *id.* (part 4 & "Your Benefits Under the Settlement" page); the contact information of the lawyers representing the class members and the amount sought for named class members, *id.* (part 6); how to object to the settlement and the time and place of the Court's scheduled fairness hearing if an objector or his counsel wished to appear, *id.* (parts 7 & 8); and who to contact if further information is sought, *id.* (part 9). The notice, in addition, advises class members that they will be bound by the settlement agreement unless they take steps to exclude themselves. *Id.* (part 3). As noted above, if a class member had further questions, the notice provides a toll-free phone line to clarify or obtain further information.

In addition, the notice campaign that defendant agreed to undertake was extensive. With the assistance of an outside consulting firm, defendant sent out over 550,000 customized notice packages, containing information about the proposed settlement, including the deadline if the notified member did not wish to be included in the settlement. More than 900 customer service representative were trained to answer class members' questions. Furthermore, defendant undertook a comprehensive television and radio advertising campaign targeted to reach the men and women likely to include class members, including airing 30–second television ads 79 times during a six week period and 30 or 60 second ads on the radio on a total of 407 radio stations across the country, all targeted to the non-Caucasian community. Further, defendant published a summary notice of the proposed settlement in a variety of demographically focused newspapers and periodicals, and posted an interactive web site and internet banners to reach class members on the internet. I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with the requirements of Rule 23(c)(2) and 23(e).

In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.

## D. Motions to Intervene

Under Rule 24(a), a person moving to intervene must (1) timely file; (2) demonstrate an interest in the action; (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise adequately protected. Fed. R.Civ.P. 24(a); *Farmland Dairies v. Com'r of N.Y. State Dep't of Agric. and Mkts.*, 847 F.2d 1038, 1043 (2d Cir.1988). Failure to satisfy any of these requirements constitutes sufficient ground to deny the application. *United States v. State of N.Y.*, 820 F.2d 554, 556 (2d Cir.1987).

### 1. Alfred Sweeney's Motion to Intervene

 Sweeney's motion is plainly without merit. I find no claims articulated by Sweeney that relate to the instant class action race discrimination claims. Indeed, Sweeney

is Caucasian and accordingly does not belong to the class (*i.e.*, African–Americans and other non-Caesarians) discriminated against by Metropolitan. Thus, he is not entitled to relief from this lawsuit as required by Rule 24(a) to intervene as of right. Furthermore, I find no compelling reasons to permit Sweeney to permissively intervene under Rule 24(b) and further delay approval of the stipulated settlement to the prejudice of those who are class members. Fed.R.Civ.P. 24(b). Sweeney's motion is denied.[3]

### 2. Albert and Violet Martin's Motions to Intervene

 Counsel for Albert Martin submitted a separate brief from Violet Martin even though the attorneys representing the Martins apparently share the same address and phone number, thus both the plaintiffs and defendant oppose the Martins' motions to intervene together. Both parties to the litigation argue that the Martins' motions to intervene are untimely. The timeliness of a motion "is determined within the sound discretion of the trial court from all the circumstances." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir.1994). The circumstances that the Court should consider, includes:

> (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.

*Id.* Here, the Martins filed their motion to intervene at the end of December 2002, nearly a year and half after the named class members filed the instant lawsuit, three months after the settlement notice campaign began, and only days before the time to object closed. The Martins offer no explanation why they waited until this late hour to make their desire to intervene known.

Moreover, in view of the advanced age of many of the class members waiting to receive the benefits from the proposed settlement, they may suffer additional prejudicial delay were I to grant the Martins' motion. Both factors militate against granting their motions to intervene. *See D'Amato*, 236 F.3d at 84; *see also Campbell v. Hall–Mark Elecs. Corp.*, 808 F.2d 775, 779 (11th Cir.1987).

The Martins apparently filed their motion to intervene out of an abundance of caution to preserve their right to appeal in light of *Ballard v. Advance America*, 79 S.W.3d 835, 349 Ark. 545 (2002). In *Ballard*, the Arkansas supreme court limited the holding of *Devlin v. Scardelletti*, 536 U.S. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002), in which the United States Supreme Court held that non-named petitioners, who objected to the settlement of a class action at a fairness hearing, did not need to intervene before having the power to properly appeal. *See* 79 S.W.3d. at 837. The court in *Ballard* held that if objectors have the right to exclude themselves from the settlement, then they must intervene first to have standing to appeal a class action settlement approval. *Id.* The Martins note that two federal courts, in dicta, have found merit in the *Ballard* holding. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir.2002); *In re General American Life Ins. Co. Sales Practices Litig.*, 302 F.3d 799 (8th Cir.2002)(noting that the *Devlin* holding seemed to draw its strength from the fact that petitioners in that case could not opt out of the settlement). Although the Martins appear to contend that denying their motion to intervene would prejudice their right to appeal, I do not share their concern. While the scope of *Devlin* remains uncertain at this time, it is worth noting that "[t]he label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Devlin*, 122 S.Ct. at 2010. For

---

**3.** In his motion, Sweeney requests the assistance of counsel. Although Sweeney may have legitimate claims that stand independent from the instant class action, he does not have the right to have counsel appointed to him. *See Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835–36 (9th Cir.1976); *see also Walsh v. Great*

*Atlantic & Pacific Tea Co.*, 726 F.2d 956, 964 (3d Cir.1983) (finding that the trial court did not err in not appointing counsel for objectors). If Sweeney is unable to retain an attorney, I recommend that he apply to the *Pro Se* Office at the United States District Court in the Southern District of New York to request a pro bono attorney.

instance, unnamed class members do not have to intervene to preserve their claims because they become "parties" in the sense that an action filed on their behalf tolls the statute of limitations against them. *Id.* The Supreme Court indicated that "[w]hat is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement... [T]he power to appeal is limited to those nonnamed class members who have objected to the fairness hearing." *Id.,* 122 S.Ct. at 2011. "To determine who may appeal, courts must ascertain whether putative appellants are 'bound by the order from which they were seeking appeal.'" *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 313 F.3d 70, 82–83 (2d Cir.2002)(*quoting Devlin,* 122 S.Ct. at 2010). In *Devlin,* the Supreme Court found the petitioner's plight "particularly" compelling because he did not have the ability to exclude himself from the settlement, and thus appealing the approval was the only option available to protect him. *Devlin,* 122 S.Ct. at 2010. The facts in the instant case present a similar though not identical situation. Here, the Martins, by not opting out, are bound by the settlement. Furthermore, they objected within the deadline, and were allowed to present their objections at the fairness hearing. I concur with the Court's observation that there is little value in further requiring objectors to intervene before allowing them the right to appeal. *Id.,* 122 S.Ct. at 2012 ("Given the ease with which nonnamed class members who have objected at the fairness hearing could intervene for purposes of appeal... [I]t is difficult to see the value of the Government's suggested requirement."). The rejected objections could be addressed easily by the court of appeals without adding an additional layer of complexity by requiring the unnamed class members to intervene before appeal of the settlement approval may be heard. *See id.,* 122 S.Ct. at 2012–13 (acknowledging that the structure of the rules of class action procedure do not require intervention for purposes of appeal). "Just as class action procedure allows nonnamed class members to object to a settlement at the fairness hearing without first intervening, it

should similarly allow them to appeal the District Court's decision to disregard their objections." *Id.; see also Karaha,* 313 F.3d at 83 ("[W]e have long allowed appeal 'when the nonparty has an interest that is affected by the trial court's judgment."). In my reading of *Devlin,* the Martins' right to appeal would not be prejudiced if I denied their motions to intervene. On the whole, the circumstances here do not favor finding the Martins' motion to intervene as timely, and thus I could deny the Martins' motion to intervene on this ground alone.

Assuming, *arguendo,* that my analysis above in regard to timeliness and the Martins' ability to appeal were flawed, I would add that the Martins had the option to exclude themselves from the settlement. By not excluding themselves, the Martins, while conscious of *Ballard,* willingly undertook the risk of being bound by the settlement. In the end, they may find themselves without standing to appeal. *Ballard,* 79 S.W.3d at 837; *see Rutter,* 314 F.3d at 1185 n. 2; *In re General American,* 302 F.3d at 800. Nonetheless, they had the right to object at the fairness hearing, and they could have opted-out of the settlement and litigated elsewhere. Where class members' differences of opinion with class counsel on a negotiated settlement can be adequately addressed through the Court's consideration of the objections, intervention is unnecessary and unwarranted. *See Nasdaq,* 187 F.R.D. at 491.

For good measure, I would add that I find no reason to conclude that the Martins' interests were not adequately protected by the class representatives and class counsel. The Martins present nothing, besides conclusory allegations, that their interests were not adequately protected. I find no conflicts of interest between the class representatives and unnamed class members that might suggest an antagonistic interest between members of this class. *See In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992). Furthermore, the Martins make no showing, other than innuendo, that representation by class counsel is inadequate. The Martins suggest that class counsel may be improperly motivated to have the settlement approved, despite the alleged shortcomings

in the proposed settlement, out of the desire to receive the multi-million dollar attorneys' fees to which the parties have stipulated. Even if the Martins' characterization of the attorneys' fees as excessive were correct, these fees were determined after the proposed settlement was negotiated. I find no evidence that the amount of the attorneys' fees affected or lessened the amount of recovery provided by the proposed settlement, which I determined above to be fair, adequate and reasonable. Accordingly, I find no compelling reason to grant the Martins' motion to intervene.

## E. Attorneys Fees

■ At the fairness hearing in support of the parties' motion, attorneys' fees were sought and justified. Plaintiffs have asked for a fee of $24,245,000, including expenses. As in every class action, there are a number of factors that enter into the Court's decision with respect to fees. They include the time devoted to the matter, the degree of difficulty, the risks of loss by the attorneys for the class that bring the litigation, and the likelihood of success if the matter went to trial. *See Grinnell Corp.*, 495 F.2d at 470, *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).

■ I find that the difficulty in bringing and sustaining this action, which required years of investigation and discovery, and the ability to finally settle it on terms where so many of those who were discriminated against are, at the very least, partially compensated, produced a singular and unique result. The action encompassed policy holders going back more than a half century and the complained of discriminatory conduct ended long ago. The degree of difficulty in prevailing were the matter to have proceeded to trial, highlighted by the statute of limitations concern and the availability of witnesses, made a successful outcome little more than a crap shoot.

Another distinction between this fee request and the plain vanilla common fund class actions is that it was negotiated separate and apart from the settlement. In other words, there was no fee negotiations during the settlement discussions. Fees were only discussed after the proposed settlement for the class action had been agreed upon. As a policy matter, holding the fee negotiations unencumbered by the settlement itself may well have encouraged here and may encourage future private enforcement of civil rights actions, as the parties noted. "This litigation challenges a long, unfortunate history of economic abuse and racial discrimination in this country and seeks to enhance the financial security of millions of class members whom plaintiffs allege suffered these abuses." *See* Joint Decl. at 34, ¶ 92.

Further, it should be noted that this fee encompasses not only past services but services to be rendered in the future, including the appeals by objectors, the implementation and the monitoring of the settlement and the Administration Center, and expert fees, etc. The claim process in a case such as this will continue for months and responses to class members' inquiries will require much additional time and attention.

While the Circuit has addressed fees sought in "common fund" settlements, *see, e.g., Goldberger v. Integrated Resources Inc.*, 209 F.3d 43 (2d Cir.2000) and in at least one opinion, this Court has discussed in detail the various methods used to deal with the problems of fixing fees in such cases, *see In Re Dreyfus Aggressive Growth Mutual Fund*, 2001 WL 709262 (S.D.N.Y. June 22, 2001), I find this case presents a somewhat different situation. While the fee is high in my view and the approach utilized raises some questions, the argument can be made and the parties make it that the fee equals only 15.6% of the total value of the settlement. On balance and in large part because of the way the fee was negotiated along with factors identified above, I find that the fee requested is reasonable.

■ Lastly, plaintiffs request a sum of $5,000 for each named class representative for their efforts to bring and prosecute this case. In pursuing this action, each of the class representatives were required to respond to interrogatories, search and retrieve documents sought by Metropolitan, sit through lengthy depositions, and spend per-

sonal time consulting with class counsel. In view of the burden placed on the class representatives, I am agreeable to the $5000 award to each representative. *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,* 258 F.Supp.2d 254, 263–64 (S.D.N.Y.2003)(reviewing court-approved awards to class representatives).

## III. CONCLUSION

The motion for approval of the proposed settlement, attorneys' fees, and award to class representatives is granted. An order and judgment will be filed concurrently with this Opinion.

**SO ORDERED.**